787 P.2d 126

Paul Verd STEWART and Candy Grubbs-Stewart, Petitioners,

v.

The SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable I. Sylvan Brown, a judge thereof, Respondent Judge,

The STATE of Arizona, Real Party in Interest.

No. 1 CA-SA 88-222.

Court of Appeals of Arizona, Division 1, Department B.

July 3, 1989.

Friedl & Richter by William J. Friedl and William Moore, Phoenix, for petitioner Stewart.

Debus, Bradford and Kazan, Ltd. by Larry Kazan, Phoenix, for petitioner Grubbs–Stewart.

Richard M. Romley, Maricopa County Atty. by H. Allen Gerhardt, Deputy County Atty., Phoenix, for respondent.

## OPINION

FIDEL, Presiding Judge.

The state sought pre-trial interviews with defendants' minor children, hoping to discover evidence useful to the prosecution of its case. The defendants consented on behalf of their children, but insisted that defense counsel be present and that the interviews be recorded. The state, dissatisfied with these conditions, petitioned the court to appoint a guardian ad litem for the children, and the court agreed.

We accepted the parents' petition for special action and vacated the trial court's order, stating:

1. The interview conditions set by the parents were not unreasonable.

2. Because the parents neither withheld consent to the state's efforts to gather information nor imposed unreasonable conditions restrictive of such efforts, they have not been shown in any way to have acted contrary to the interests of their children or to have subjugated their children's interests to their own.

3. The state has accordingly failed to show a conflict of interest that would justify intruding a guardian ad litem upon the parent-child relationship.

4. Under these circumstances the trial court abused its discretion in ordering the appointment of a guardian ad litem.

We added that our order was without prejudice to any further effort by the state to secure such an appointment upon a proper evidentiary showing.

■ We now elaborate upon our order. We hold that a trial court has inherent, equitable power to appoint a guardian ad litem for a child witness. However, because this power is invasive of parents' fundamental liberty interest in the care, custody, and management of their child, it must be exercised only upon a showing sufficient to trigger the court's *parens patriae* concern—that is, a showing that a child's parents, by conflict of interest or for other reasons, may be unable or unwilling to perceive or advance the child's best interest.

## I. BACKGROUND

The petitioners, husband and wife, are defendants in a criminal child abuse case. The husband was indicted on several counts of sexually molesting his wife's daughter, M. (a minor under 15 years old). The wife is charged with intentionally or knowingly placing M. in a situation that endangered her health. The state has initiated dependency proceedings, and M. is no longer in defendants' custody.

The wife has two other minor children, N. and J.P., aged six and eight.[1] These children remain in defendants' custody. The state has not initiated any dependency proceedings on their behalf; nor has it alleged that they are, or may in the future be, the victims of abuse.

The state sought to interview N. and J.P. to discover whether they had information about the alleged abuse of their older sister. When defendants consented only upon the conditions previously described, the state sought and achieved a guardianship appointment, which was followed by the defendants filing the petition now at hand.

---

1. Paul Verd Stewart is the stepfather of M. It is not clear from our limited special action record whether he is the natural father, stepfather, or adoptive father of N. and J.P. However, because Candy Grubbs–Stewart, the children's mother, joins him as petitioner in this case, his status is irrelevant to our analysis. For simplicity and ease of discussion, we refer to petitioners as the "parents" of N. and J.P.

We take special action jurisdiction because defendants lack an equally plain, speedy, or adequate remedy by appeal. Rule 1(a), 17A A.R.S. Rules of Procedure for Special Actions. If the appointment of the guardian ad litem were allowed to stand until appeal, no court order could erase the interim invasion of defendants' parental rights.

## II. THE PARENTS' INTEREST

### A. *Testimonial Privilege*

We begin by considering the parental interest that is invaded in this case. We first point out that we do not premise our decision on the existence of a parental privilege against adverse testimony by one's child. The public has a right to every person's testimony, except where precluded by a constitutional, common-law, or statutory privilege. *See Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980); *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). Although the U.S. Supreme Court has recognized certain fundamental rights of parents, it has never held that these rights include a testimonial privilege. *See, e.g., United States v. Davies,* 768 F.2d 893 (7th Cir.1985), cert. denied 474 U.S. 1008, 106 S.Ct. 533, 88 L.Ed.2d 464 (1985). We need not and do not decide today whether Arizona recognizes a parent-child testimonial privilege, but note that the weight of authority is against it.[2]

### B. *Care, Custody, and Management*

The protected interest that underlies today's decision is the "fundamental liberty interest [of parents] ... in the care, custody, and management of their child." *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982). "Freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." *Id.* In *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Supreme Court held that a state may not presume the unfitness of a parent, but instead must provide individualized procedural safeguards (notice, hearing, and

proof of unfitness) before the state can terminate parental rights. In *Santosky,* the court further held that in parental termination hearings, proof of parental unfitness must be supported by clear and convincing evidence; a mere preponderance is insufficient to satisfy due process. *Santosky,* 455 U.S. at 769, 102 S.Ct. at 1403.

*Santosky* involved termination of parental status, a drastic and conclusive state invasion of the family sphere. In contrast, the appointment of a guardian ad litem involves only a temporary, limited interference. Yet the protection of the Fourteenth Amendment applies nonetheless. Whether the state seeks to terminate or merely interrupt parental "care, custody, and management," it remains a fundamental liberty interest that the state must overcome.

A case involving issues of interference rather than termination was *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). There the Supreme Court found that the liberty guarantee of the Fourteenth Amendment assures the right to "establish a home and bring up children," and that this right encompasses the right of parents to have their children learn a foreign language without interference from the state. *Id.* at 401, 43 S.Ct. at 627.

Guardianship appointment is a form of interference with the parents' protected sphere. Parental power to make a category of decisions in the child's best interest is suspended by court order; and the court substitutes the decisions of a stranger for decisions that the parents might otherwise make. Such an invasion, albeit temporary and limited, must, like any other, be shown to be justified by an overriding interest of the state. *See, e.g., In re Cochise County Juvenile Action No. 5666–J,* 133 Ariz. 157, 650 P.2d 459 (1982) (parental custodial rights are not absolute; superior state interest must be shown).

## III. THE GUARDIANSHIP APPOINTMENT POWER

We shift from defining the parents' protected interest to defining the court's appointive power.

---

**2.** See Appendix for survey of relevant cases and     other authority.

Defendants focus on the fact that this appointment was made by a *criminal* division of the Superior Court for Maricopa County and argue that only *juvenile* divisions may properly exercise such power. Defendants launch this argument by asserting that guardianship is a form of modification of the parent-child relationship. They then contend that the authority to modify the parent-child relationship is vested exclusively in the juvenile court by virtue of A.R.S. § 8–532. That statute provides in relevant part:

A. The juvenile court shall have exclusive original jurisdiction over petitions to terminate the parent-child relationship when the child involved is present in the state.

By the plain language of the statute, the juvenile court has exclusive jurisdiction over *termination* proceedings. As stated above, the state has not initiated termination proceedings on behalf of N. or J.P.; thus, the juvenile court's exclusive jurisdiction over terminations is irrelevant.

Defendants next point out that A.R.S. § 8–535(D) authorizes the juvenile court "in any [termination] case, [to] appoint a guardian ad litem as may be deemed necessary for any party." However, contrary to defendants' contention, this is not an exclusive grant of guardianship appointment power. Other divisions of the superior court are granted express authority to appoint guardians ad litem under a number of circumstances. *See, e.g.,* A.R.S. § 14–1403(4) (probate) and Rule 17(g), 16 A.R.S. Rules of Civil Procedure (civil).

We acknowledge that no rule or statute expressly grants a criminal division the authority to appoint a guardian ad litem for children who might be called as witnesses. This, however, does not require the conclusion that a criminal court lacks authority to make such an appointment in an appropriate case. We find that the rules and statutes that presently express the court's authority to appoint guardians ad litem are not exclusive *sources* of that power. Rather they are non-exclusive codifications of an equitable power and responsibility dating back to chancery days.

The *parens patriae* doctrine has long recognized the court's power to protect the interests of children before it. *See Schall v. Martin,* 467 U.S. 253, 265, 104 S.Ct. 2403, 2410, 81 L.Ed.2d 207 (1984); *see also, Application of Gault,* 99 Ariz. 181, 188, 407 P.2d 760, 766 (1965) rev'd on other grounds, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Fladung v. Sanford,* 51 Ariz. 211, 214, 75 P.2d 685, 686 (1938); *Bell v. Bell,* 44 Ariz. 520, 528, 39 P.2d 629, 632 (1934); *Matter of Appeal in Maricopa County Juvenile Action No. JS–734,* 25 Ariz.App. 333, 338, 543 P.2d 454, 459 (1975). The doctrine of *parens patriae* recognizes both the power and the duty of the courts to act for the child's best interests. *See* Note, *Arizona's Presumption Favoring Parental Rights—A Variable Standard?,* 23 Ariz.L.Rev. 470, 471 (1981); Note, *Developments in the Law—The Constitution and the Family,* 93 Harv.L. Rev. 1156, 1221 (1980).

In *Bell v. Bell,* 44 Ariz. 520, 39 P.2d 629 (1934), our supreme court said:

The jurisdiction of courts of equity over the persons and property of infants dates from a very early period in the history of these courts. In its inception, this jurisdiction belonged to the king of England, the same constituting part of his powers, as *parens patriae,* to protect his subjects, and was transferred by him to the court of chancery. This jurisdiction is broad, comprehensive, and plenary. In all suits or legal proceedings, of whatever nature, in which the personal or property rights of a minor are involved, the protective powers of a court of chancery may be invoked whenever it becomes necessary to fully protect such rights. Should such proceedings be instituted, and it should appear to the court that the infant is unrepresented by any one fully charged with the power and duty of protecting his interests, it is the duty of the court to appoint a guardian *ad litem* for the minor.…

44 Ariz. at 528, 39 P.2d at 632 (quoting *Richards v. East Tennessee, V. & G. Ry. Co.,* 106 Ga. 614, 33 S.E. 193, 197 (1899)).

■ A criminal court has infrequent occasion to exercise "the protective powers of a court of chancery." However, our superior courts are constitutionally established as a single, integrated court. Ariz. Const. art. 6, § 13. And, we hold, when a child is tendered as a witness in a criminal proceeding, the court's protective interest is aroused. Thus, we conclude that a criminal division of the superior court possesses inherent equitable power to appoint a guardian ad litem for a child witness, where necessary to protect the interest of the child, despite the absence of a specific criminal rule or statute that presently codifies such power.[3]

## IV. THE STATE'S BURDEN

■ Although we reject the defendants' argument that a criminal division of the superior court lacks guardianship appointment power, we find no sufficient basis for the court to exercise that power in the circumstances argued by the state.

The common justification for appointment in the statutes and the case law is that parents, by conflict of interest or for other reasons, are unavailable, unable, or unwilling to perceive or advance the child's best interests in the court. *Bell*, 44 Ariz. at 528, 39 P.2d at 632. *See also* A.R.S. § 14–1403(4) (guardianship appointment in probate proceedings); Rule 17(g), 16 A.R.S. Rules of Civil Procedure (guardianship appointment in civil proceedings); A.R.S. § 8–225 (appointment of *attorney* for child in juvenile proceedings where parent and child have conflict of interest).

In the present case, however, it is premature at best to suppose a conflict between parent and child. First, no conflict arises automatically from the criminal allegations

against defendants; a presumption of innocence applies. Second, N. and J.P., unlike their older sister, are not alleged to be the victims of defendants' criminal acts. Nor has the state asserted in their case a sufficient breakdown of parental protection to warrant dependency proceedings in the juvenile court.

The conflict arises, the state asserts, from the fact that it seeks information from the children that may prove harmful to defendants. Yet this conflict was wholly abstract at the stage when the state sought the intervention of the court. The state made no prima facie showing what, if any, information the children might provide. It was wholly speculative whether the children would offer incriminating evidence that the defendants might be motivated to suppress, exonerating information that defendants might be motivated to facilitate, or no information at all.

Finally, and most significantly, when we turn from abstract speculation over what the children might reveal to specific examination of the conduct of defendants, we find nothing in the least obstructive in their response to the state's discovery request. They made no effort to block an interview with the children. They only required that counsel be present and that a tape recording be made. The state does not explain how such conditions reflect a divergence of interest between parent and child or subjugate the children's interests to defendants' own.

## V. CONCLUSION

We do not rule out the possibility that a conflict may arise that warrants a guardianship appointment during the progress of this case.

3. We note further that a criminal court may draw upon the civil rules in certain circumstances for the enumeration of its powers. Our supreme court has long held that, in the absence of an applicable criminal rule, criminal courts may look to the civil rules for a definition of their powers, insofar as the rules of civil procedure codify the powers of the court at common law. *Sam v. State*, 33 Ariz. 421, 265 P. 622 (1928), reaffirmed in *State v. Lopez*, 96 Ariz. 169, 393 P.2d 263 (1964). We believe the same holds true where the civil rules codify the tradi-

tional equitable powers and duties of the court. Thus, the trial court's power to entertain the question of guardianship in this case was also supported by Rule 17(g), 16 A.R.S. Rules of Civil Procedure, which provides in part:

The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

We hold, however, that such a conflict was wholly speculative when the present issues arose and that the state made an insufficient showing to justify the court's intrusion by guardianship appointment upon the parents' right to make decisions in the best interest of their children.

For that reason we set aside the trial court's order without prejudice to a later, substantiated effort by the state.

JACOBSON and EUBANK, JJ., concur.

## APPENDIX FOR FOOTNOTE 2

Arizona courts probably have the power to recognize a parent-child testimonial privilege "in light of reason and experience," see Rule 501, 17A A.R.S. Rules of Evidence. However, as the following cases demonstrate, the weight of authority is against recognition of a parent-child testimonial privilege. *Harris v. Harris*, 461 So.2d 1330, 1332 (Ala.1984); *In re Terry W.*, 59 Cal.App.3d 745, 749, 130 Cal.Rptr. 913, 915 (1976); *Hope v. State*, 449 So.2d 1319, 1320 (Fla.Dist.Ct.App.1984); *People v. Sanders*, 99 Ill.2d 262, 75 Ill.Dec. 682, 457 N.E.2d 1241, 1245 (1983); *Hunter v. State*, 172 Ind.App. 397, 360 N.E.2d 588, 598 (1977) *cert. denied*, 434 U.S. 906, 98 S.Ct. 306, 54 L.Ed.2d 193 (1977); *State v. Gilroy*, 313 N.W.2d 513, 518 (Iowa 1981); *State v. DeLong*, 456 A.2d 877 (Me.1983) (upholding contempt conviction for 17-year-old who refused to testify against her father); *Three Juveniles v. Commonwealth*, 390 Mass. 357, 455 N.E.2d 1203, 1207 (1983), *cert. denied*, 465 U.S. 1068, 104 S.Ct. 1421, 79 L.Ed.2d 746 (1984) (overruled in part by state statute, Mass.Gen.L. Ann. ch. 233, § 20 (Supp.1989)); *Buck v. Buck*, 320 Mich. 624, 31 N.W.2d 829, 831 (1948); *People v. Amos*, 163 Mich.App. 50, 414 N.W.2d 147, 149 (1987); *Powell v. Powell*, 198 Miss. 301, 22 So.2d 160 (1945); *State v. Bruce*, 655 S.W.2d 66, 68 (Mo.Ct. App.1983); *In re Gail D.*, 217 N.J.Super. 226, 525 A.2d 337 (1987); *In re Frances J.*, 456 A.2d 1174, 1177–78 (R.I.1983); *DeLeon v. State*, 684 S.W.2d 778, 782 (Tex.App.

1984); *State v. Maxon*, 110 Wash.2d 564, 756 P.2d 1297 (1988).

*But see In re Agosto*, 553 F.Supp. 1298, 1325 (D.Nev.1983) (recognizing parent-child testimonial privilege); *People v. Fitzgerald*, 101 Misc.2d 712, 422 N.Y.S.2d 309 (1979) (recognizing parent-child confidential communications privilege); *In re A & M*, 61 A.D.2d 426, 403 N.Y.S.2d 375 (1978) (same). *See also* Idaho Code § 9–203(7) (Supp.1988) (providing for parent-child confidential communications privilege); Mass.Gen.L. Ann. ch. 233, § 20 (Supp.1989) (same); Minn.Stat.Ann. § 595.02(1)(i) (same).

Some commentators have suggested the propriety of a parent-child confidential communications privilege under certain circumstances. *See* Coburn, *Child–Parent Communications: Spare the Privilege and Spoil the Child*, 74 Dick.L.Rev. 599 (1969); Kandoian, *The Parent–Child Privilege and the Parent–Child Crime: Observations on* State v. DeLong *and* In re Agosto, 36 Me.L.Rev. 59 (1984); Kraft, *The Parent–Child Testimonial Privilege: Who's Minding the Kids?*, 18 Fam.L.Q. 505 (1985); Stanton, *Child–Parent Privilege for Confidential Communications: An Examination and Proposal*, 16 Fam.L.Q. 1 (1982); Comment, *From the Mouths of Babes: Does the Constitutional Right of Privacy Mandate a Parent–Child Privilege?*, 1978 B.Y.U.L.Rev. 1002 (1978); Comment, *Parent–Child Testimonial Privilege: An Absolute Right or an Absolute Privilege?*, 11 U.Dayton L.Rev. 709 (1986); Comment, *Parent–Child Testimonial Privilege: Preserving and Protecting the Fundamental Right to Family Privacy*, 52 U.Cin.L.Rev. 901 (1983); Comment, *The Child–Parent Privilege: A Proposal*, 47 Fordham L.Rev. 771 (1979); Comment, *Confidential Communication Between Parent and Child: A Constitutional Right*, 16 San Diego L.Rev. 811 (1979); Note, *Parent–Child Loyalty & Testimonial Privilege*, 100 Harv.L.Rev. 910 (1987); Note, *Recognition of a Parent–Child Testimonial Privilege*, 23 St. Louis U.L.J. 676 (1979).

*But see* Schlueter, *The Parent–Child Privilege: A Response to Calls for Adoption*, 19 St. Mary's L.J. 35 (1987); Note, *Questioning the Recognition of a Parent–Child Testimonial Privilege*, 45 Alb.L.Rev. 142 (1980).