455 S.E.2d 274

**Mark C. WILLIS, Guardian Ad Litem for Cellina Marie Flewellen, an Infant**

v.

**Robert J. GAMEZ and Michelle Flewellen.**

**Record No. 0817–94–2.**

Court of Appeals of Virginia,
Richmond.

March 28, 1995.

Mark C. Willis, Fredericksburg, for appellant.

Murray M. Van Lear, II, Fredericksburg (Scott, Daltan & Van Lear, on brief), for appellee Michelle Flewellen.

No brief or argument for appellee Robert J. Gamez.

Present: BENTON, J., COLE, Senior Judge, and TRABUE *, Retired Judge.

BENTON, Judge.

Upon the petition of Robert Gamez, the father of Cellina Marie Flewellen, and without objection from Michelle Flewellen, the infant's mother, the trial judge terminated the father's residual parental rights to the infant. The guardian ad litem objected to the decree and contends on appeal that (1) the trial judge failed to comply with the statutory requirements for terminating parental rights; (2) the circuit court lacks inherent authority to terminate parental rights; (3) the best interest of the child was not served by terminating her legal relationship with her father upon the mere finding that her parents were hostile to each other; (4) the trial judge failed to use alternative remedies which would have protected the child's right of support and would have been in the child's best interest; and (5) the trial judge abused his discretion in terminating the father's parental rights. For the reasons that follow, we reverse the decree terminating the father's residual parental rights.

Cellina Flewellen was born August 9, 1993. Her parents, who were never married to each other, each petitioned the juvenile and domestic relations district court for her custody. The juvenile court judge appointed a guardian ad litem for the child and ordered various relief, including temporary custody

---

* Retired Judge Kenneth E. Trabue took part in the consideration of this case by designation pursuant to Code § 17–116.01.

to the mother, temporary visitation to the father, child support of $500 per month to be paid by the father, and homestudies of both parents.

Following entry of the juvenile court order, the relations between the father and mother deteriorated. When the father did not comply with the support order, the mother filed a petition to terminate the father's parental rights. The juvenile court judge suggested that the parties proceed in the circuit court.

The father then began this proceeding by filing a sworn motion in the circuit court to terminate his parental rights. The motion stated that the proceeding in the circuit court was brought pursuant to Code §§ 16.1–241(A)(4) and 16.1–277 and pursuant to the circuit court's general equity jurisdiction. In the motion, the father alleged that he was the biological father of the child; that a "conflictual relationship" existed between him and the mother; that he "agree[d] and consent[ed]" to the adoption of the child by any person the mother chose; that he desired to terminate his residual parental rights to the child; and that the termination of his residual parental rights was in the child's best interest.

In her answer to the motion, the mother agreed with the essential allegations in the motion. She also concurred that the child's best interest would be served by terminating the father's parental rights. The trial judge appointed Mark C. Willis, an attorney, as guardian ad litem to represent the interests of the child.

At an evidentiary hearing, the trial judge heard testimony from the parents that they understood the consequences of the termination of the father's residual parental rights and that they desired that relief. The trial judge found that the parents' relationship involved "unusual animosity and ill will;" that the child's well-being and financial support were provided for by the mother and her family; that both parents voluntarily and knowingly wished to terminate the father's residual parental rights; that the father was not providing monetary

support for the child; and that both parents were represented by counsel.

The trial judge ruled that the circuit court had inherent authority to terminate the father's residual parental rights. The trial judge also ruled that "no good reason [existed] to deny the petitions for the sole purpose of permitting future exposure of the father to child support if the mother and her family's assurances to provide for the child proved to be untrue." The trial judge further found by clear and convincing evidence that the child's best interests were served by termination of the father's parental rights.

The threshold issue that the guardian ad litem presents is whether the circuit court's jurisdiction was properly invoked to consider the father's petition. Citing Code §§ 16.1–241, 16.1–277, 16.1–278.2, 16.1–278.3, 16.1–281, and 16.1–283, the guardian ad litem asserts on this appeal, without elaboration, that the statutory requirements have not been followed. Although the record is unclear whether the parties addressed to the trial judge the meaning of the various statutes, the statement of facts indicates that the guardian ad litem argued that the trial judge "had no authority to terminate the father's parental rights since ... Code § 16.1–283 was not being utilized."

The mother argues that the statutory requirements were satisfied and, in particular, argues that the juvenile court "most likely waived any exclusive original jurisdiction it had over the issue when it 'referred' the case to the circuit court without objection by the parties." We disagree.

The juvenile court's jurisdictional statute states in pertinent part as follows:

> Except as hereinafter provided, each juvenile and domestic relations district court shall have, within the limits of the territory for which it is created, exclusive original jurisdiction, and within one mile beyond the limits of said city or county, concurrent jurisdiction with the juvenile court or courts of the adjoining city or county over all cases, matters and proceedings involving:

A. The custody, visitation, support, control or disposition of a child:

\*  \*  \*  \*  \*  \*

5. Where the termination of residual parental rights and responsibilities is sought. In such cases jurisdiction shall be concurrent with and not exclusive of courts having equity jurisdiction, as provided in § 16.1–244.

Code § 16.1–241.

In relevant part, Code § 16.1–244(A) provides that "[n]othing contained in this law shall deprive any other court of the concurrent jurisdiction . . . to determine the custody, guardianship, visitation or support of children when such custody, guardianship, visitation or support is incidental to the determination of causes pending in such courts." Thus, although concurrent jurisdiction to terminate parental rights might exist in some cases, the record does not establish the circuit court's jurisdiction in this case. Even if we assume that a termination of residual parental rights involves the "custody, guardianship, visitation or support of children," the record in this case does not establish that a cause was pending in the circuit court to which the father's petition would be "incidental" to a determination of that cause. Nothing in either Code § 16.1–241 or Code § 16.1–244 permits the juvenile court to "waive" its jurisdiction and allow a party to bring an original action in the circuit court without meeting the statutory requirements.

Furthermore, Code § 16.1–283 provides the statutory framework for a court in this Commonwealth to terminate residual parental rights. *Rader v. Montgomery County Dep't of Social Services,* 5 Va.App. 523, 365 S.E.2d 234 (1988). Nothing in Code § 16.1–283 creates ambiguity concerning the court's jurisdiction. "[I]t is clear that 'the court' referred to in [Code] § 16.1–283 is the juvenile and domestic relations district court." *Todaro v. Alexandria Dep't of Social Services,* 226 Va. 307, 308, 309 S.E.2d 303, 304 (1983).

That [statutory] scheme provides detailed procedures designed to protect the rights of the parents and their child.

These procedures must be strictly followed before the courts are permitted to sever the natural and legal bond between parent and child.

*Rader*, 5 Va.App. at 526, 365 S.E.2d at 235–36.

▮ In the absence of a showing that the circuit court acquired concurrent jurisdiction as mandated by statute, the juvenile court was the statutorily designated forum in which to initiate a petition for the termination of parental rights.[1] Thus, we must reverse the judgment unless the circuit court had inherent authority to proceed under its general equity powers.

Citing general principles, the guardian ad litem argues that the circuit court does not have inherent equity jurisdiction to terminate residual parental rights and that the circuit court's authority to terminate residual parental rights derives solely from legislative enactment. Relying upon *Verrocchio v. Verrocchio*, 16 Va.App. 314, 318–19, 429 S.E.2d 482, 485 (1993), the mother argues that the trial judge properly acted on the father's motion because the circuit court has inherent power to protect the rights of children. In granting the relief that the father and mother sought, the trial judge cited no authority for the proposition that he had authority to sever the parent-child relationship without regard to the jurisdictional statute and limiting provisions of Code § 16.1–283. We find no authority to support such an exercise of power.

In *Verrocchio*, we acknowledged that " '[in] all suits or legal proceedings, of whatever nature, in which the ... rights of a

---

1. We do not decide whether the evidence was sufficient to terminate the father's parental rights. However, we note that the statute provides that "[n]o petition seeking termination of residual parental rights shall be accepted by the court prior to the filing of a foster care plan, pursuant to [Code] § 16.1–281, which documents termination of residual parental rights as being in the best interests of the child." Code § 16.1–283(A). *But see Rader*, 5 Va.App. at 526, 365 S.E.2d at 235–36 ("Except in the case of abandonment and where the identity of the parents cannot be determined, that scheme provides that after the filing of a foster care plan which documents termination of residual parental rights as being in the best interest of the child, ... the courts may terminate residual parental rights based on specified statutory factors").

minor are involved, the protective powers of a court of chancery may be invoked whenever it becomes necessary to fully protect such rights.'" 16 Va.App. at 319, 429 S.E.2d at 485 (quoting *Stewart v. Superior Court,* 163 Ariz. 227, 230, 787 P.2d 126, 129 (App.1989)). However, we recognized that those protective powers were derived from the "common law doctrine of parens patriae." *Id.* 16 Va.App. at 318, 429 S.E.2d at 485. Unlike the common law genesis for the doctrine of parens patriae, "there was [no] legal authority under the common law ... for a total relinquishment of parental rights and obligations or any inherent authority in any court to terminate them." *Carroll County v. Edelmann,* 320 Md. 150, 577 A.2d 14, 25 (1990). The mother cites no authority for the proposition that the Supreme Court of Virginia has recognized inherent authority in circuit courts to terminate parental rights. We find no basis to support the mother's position.

■ The rule is well established in Virginia that when the legislature has enacted a comprehensive statutory scheme that encompasses a matter that was not formerly within the purview of the common law, a court, when exercising the jurisdiction conferred under that statutory scheme, may not proceed in derogation of the statutory scheme. *Malpass v. Morgan,* 213 Va. 393, 398, 192 S.E.2d 794, 798 (1972). *See also State ex rel. Juvenile Dep't v. Geist,* 310 Or. 176, 796 P.2d 1193, 1202 (1990); *H.G.R. v. Smith,* 483 S.W.2d 779, 781–82 (Mo.Ct.App. 1972). The obligation to comply with the statutory scheme that has been designed by the legislature to protect parents and children cannot be abandoned by a judge under the guise of seeking to "promote the best interests of a child." *Malpass,* 213 Va. at 398, 192 S.E.2d at 798. *See also In re Juvenile Appeal,* 177 Conn. 648, 420 A.2d 875, 886 (1979). "[B]y statute, the [trial judge] is required to find both that the termination of parental rights will promote the best interests of the child *and* that certain factors listed in the statute are present." *Knox v. Lynchburg Div. of Social Services,* 223 Va. 213, 220, 288 S.E.2d 399, 403 (1982) (emphasis added).

Because the legislature has devised a thorough and detailed statutory scheme for courts to follow in terminating residual parental rights, we conclude that the legislature has rendered the proceeding to terminate residual parental rights " 'a chancery case *sui generis.*' " *Reid v. Reid,* 245 Va. 409, 413, 429 S.E.2d 208, 210 (1993) (quoting *McCotter v. Carle,* 149 Va. 584, 593, 140 S.E. 670, 673 (1927)). The Supreme Court has stated that "[s]tatutes terminating the legal relationship between parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship." *Weaver v. Roanoke Dep't of Human Resources,* 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980). Accordingly, we hold that the trial judge erred by failing to follow the jurisdictional and statutory limitations when he severed the father's residual parental rights.

*Reversed and dismissed.*