COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Bumgardner and Humphreys
Argued at Alexandria, Virginia


DANIEL JOSEPH FERGUSON
                                                OPINION
v.    Record No. 1047-02-4        JUDGE ROBERT J. HUMPHREYS
                                          JANUARY 14, 2003
CHRISTINE AYLOR GRUBB


            FROM THE CIRCUIT COURT OF CULPEPER COUNTY
                J. Howe Brown, Jr., Judge Designate

            Michael Kevin Murphy (Law Office of Michael
            Kevin Murphy & Associates, on briefs), for
            appellant.

            No brief or argument for appellee.

            J. Michael Sharman (Commonwealth Law Offices,
            P.C., on brief), Guardian ad litem for the
            minor children.


     Daniel Joseph Ferguson appeals from an order of the Culpeper

County Circuit Court, disposing of his appeal from the juvenile

and domestic relations district court ("J&DR court").  Ferguson

contends that the circuit court erred in incorporating the J&DR

court's order into its order disposing of Ferguson's appeal,

because the J&DR court's order contained inappropriate language

concerning the continued appointment of a guardian ad litem.  For

the following reasons, we affirm the judgment of the circuit

court.

I.

Ferguson and Christine Aylor Grubb were never married, but produced two children during their relationship. On February 28, 2000, the circuit court entered an order granting Grubb sole custody of the children, subject to certain specified visitation periods reserved for Ferguson. During the proceedings upon which the custody order was based, J. Michael Sharman represented the children as their court-appointed guardian ad litem. The custody order released Sharman as the guardian ad litem, but transferred "all matters pertaining to the custody, visitation, [and] support" of the children back to the J&DR court for purposes of "future enforcement of the decree or for modification [of the] provisions thereof as the circumstances may require."

In April of 2001, a complaint was filed with the Orange County Department of Social Services, alleging that Ferguson had failed to properly supervise the boys.

Because of the complaint, Grubb denied Ferguson visitation with the boys on Easter weekend of that year, as well as for two weekends in April 2001, two weekends in May 2001, and one weekend in June 2001.[1] Accordingly, Ferguson commenced an enforcement action in the J&DR court, obtaining three show cause summonses against Grubb, directing her to show cause why she should not be

_____

[1] Apparently, on May 22, 2001, the J&DR court ordered no further visitation until the matter was resolved.

- 2 -

held in contempt of the February 28, 2000 custody and visitation order.

A hearing on these matters was scheduled for June 14, 2001. Prior to the hearing, Ferguson and Grubb informed the J&DR court that they had reached an agreement concerning the visitation issue. In response, the court re-appointed Sharman as guardian <u>ad litem</u> for the children so that he could represent their interests as they pertained to any such agreement.

On October 23, 2001, the matter remained unresolved and the J&DR court entered an order addressing the matter of the rules to show cause, as well as "two petitions to modify visitation filed by plaintiff." The court stated, in relevant part, as follows:

<u>Decree</u>

\*     \*     \*     \*     \*     \*     \*

The Circuit Court order of February 28, 2000 is modified only as stated herein, and

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that

1. This case is to be considered a foster care prevention case.

2. Father is to receive, as compensation for the visitation time lost, two (2) consecutive weeks of visitation beginning June 15, 2001 at 5:00 p.m., and continuing to June 29th, 2001 at 5:00 p.m.

\*     \*     \*     \*     \*     \*     \*

In addition to the those [sic] items above that were agreed upon there were certain issues that the parties disagreed upon when the draft of the Order was presented. On

September 20, 2001, the Court heard argument
as to those issues with all parties present.

Whereupon it is further ordered by the Court
as follows:

10.  The appointment of the guardian ad
litem is continued in this court, and the
guardian ad litem and his staff shall have
access to both parents' homes on an
announced or unannounced basis.

11.  Between the hours of 10:00 p.m. and
6:30 a.m., no party shall allow a person
with whom he/she has a romantic relationship
or a person of the opposite sex, who is over
the age of 18 and is unrelated by blood or
marriage, to be in the residential unit
(including but not limited to tent, camper,
hotel room, condominium or house/apartment)
where any of the children are located.  This
shall not apply to a person of the opposite
sex who is accompanied by his/her spouse.

12.  Between the hours of 10 p.m. [sic] and
6:30 a.m., no party shall allow a person in
whom one of the children has a romantic
interest or a person that one of the
children is dating to be in the residential
unit where any of the children are located.

\*       \*       \*       \*       \*       \*       \*

Nothing further having come before the
Court, This [sic] matter is ended.

Ferguson signed the order, but noted his objections to

"[p]rovisions 10, 11 & 12," "as being beyond the authority of the

Court."  Ferguson subsequently noted his appeal to the circuit

court, and additionally requested compensatory custodial relief

and counsel fees.

On December 17, 2001, the circuit court held a conference and

scheduled the hearing on the appeal for February 25, 2002.  The

- 4 -

court also "reconfirmed" Sharman as guardian ad litem for the children. Subsequently, Ferguson filed a motion to vacate the appointment of Sharman as guardian ad litem.

On February 25, 2002, the circuit court first considered Ferguson's motion to vacate Sharman's appointment. After hearing evidence on the motion, the court denied the motion holding that the evidence did not support Ferguson's claim that Sharman had acted inappropriately in his role as guardian ad litem and that Sharman's services were necessary in this particular case because of his institutional knowledge of the parties and their various court proceedings.

The court then considered Ferguson's appeal and request for compensatory visitation. After hearing evidence and argument, the court denied Ferguson's request for additional visitation, finding that Grubb had not willfully disobeyed the custody order. The court also found that a continued appointment of the guardian ad litem in this matter was warranted under the circumstances of this case and that such intervention was necessary because the "children [were] in some jeopardy, and [as such,] foster care prevention [was] appropriate." In addition, the court found that there was no legal bar to the guardian ad litem's use of "staff to

make investigations at the home," holding that such use of staff was "an implied power that the [g]uardian [a]d [l]item has."[2] Accordingly, the circuit court issued its written order on March 27, 2002 declaring, in addition to the above, that "[a]ll of the numbered and lettered portions that appear[ed] in the decretal portion of the lower court's October 23, 2001 order, except for Provision 11[] and 12[] on Page 5 thereof and except as are otherwise provided for herein, are hereby incorporated into and made a part of this order."  The order further remanded "[t]his matter and all future matters regarding enforcement . . . to the Culpeper [JD&R] court."

## II.

On appeal to this Court, Ferguson raises only two issues. Ferguson first argues that the circuit court erred in incorporating paragraph 10 of the J&DR court's order into its decree, because he argues the court lacks the authority to order the continued appointment of a guardian ad litem where no legal proceedings remain before the court.  Under the circumstances of this case, we disagree.

"The trial court's decision, when based upon an ore tenus hearing, is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it."

---

[2] However, the court struck paragraphs 11 and 12 of the J&DR court's order.

_Venable v. Venable_, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986).  Indeed, "on review the 'decision of the trial judge is peculiarly entitled to respect for he saw the parties, heard the witnesses testify and was in closer touch with the situation than the [appellate] Court, which is limited to a review of the written record.'"  _Sutherland v. Sutherland_, 14 Va. App. 42, 44, 414 S.E.2d 617, 618 (1992) (quoting _Brown v. Brown_, 218 Va. 196, 200, 237 S.E.2d 89, 92 (1977)).  Matters of custody and determinations pertaining to the best interests of the children at issue, "are left largely to the discretion of the trial court whose judgments will not be reversed in the absence of a showing that the discretion given has been abused."  _Id._

Code § 16.1-266, pertaining to the appointment of guardians _ad_ _litem_ in matters involving children, provides as follows, in relevant part:

> A.  Prior to the hearing by the court of any case involving a child who is alleged to be abused or neglected or who is the subject of an entrustment agreement or a petition seeking termination of residual parental rights or who is otherwise before the court pursuant to subdivision A 4 of § 16.1-241 or § 63.1-219.37, the court shall appoint a discreet and competent attorney-at-law as guardian _ad_ _litem_ to represent the child pursuant to § 16.1-266.1.
>
> \*      \*      \*      \*      \*      \*      \*
>
> D.  In all other cases which in the discretion of the court require counsel or a guardian _ad_ _litem_ to represent the interests of the child or children or the parent or guardian, a discreet and competent

- 7 -

attorney-at-law may be appointed by the court.  However, in cases where the custody of a child or children is the subject of controversy or requires determination and each of the parents or other persons claiming a right to custody is represented by counsel, the court shall not appoint counsel or a guardian ad litem to represent the interests of the child or children unless the court finds, at any stage in the proceedings in a specific case, that the interests of the child or children are not otherwise adequately represented.

Ferguson contends that, subsequent to the disposition of his appeal to the circuit court, there was no "case" before the court to warrant the court's continued appointment of the guardian ad litem.  Therefore, he contends the court's order directing the continued appointment was erroneous as the court lacked the statutory authority to order such an appointment.

We first, and most importantly, note that "'[i]n Virginia, we have established the rule that the welfare of the infant is the primary, paramount, and controlling consideration of the court in all controversies between parents over the custody of their minor children.  All other matters are subordinate.'"  Verrocchio v. Verrocchio, 16 Va. App. 314, 318, 429 S.E.2d 482, 484 (1993) (quoting Mullen v. Mullen, 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948)).  Accordingly, "[i]n matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests."  Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).

- 8 -

An example of this broad authority granted to courts in such matters appears in Code § 20-124.2, concerning court-ordered custody and visitation arrangements.  That section provides that once a court enters an order concerning matters of custody and visitation, "[the] court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce [that] order . . . ."  Code § 20-124.2.  Thus,

> [o]nce a court has ruled on matters relating to the custody and care of minor children, and visitation rights of the non-custodial parent, the court retains jurisdiction throughout the minority status of the child involved.  The court, in the exercise of its sound discretion, may alter or change custody or the terms of visitation when subsequent events render such action appropriate for the child's welfare.

Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986) (citations omitted).

Therefore, because relief under the child custody statute remains within the court's jurisdiction throughout the infancy of the child involved, it is clear that both the J&DR court and the circuit court here retained jurisdiction over the custody matters of the children, sufficient to empower them with the authority to order the continued appointment of the guardian ad litem, until the children reached the age of majority.[3]

---

[3] This fact remains true, despite the J&DR court's, perhaps, inartful wording in the October 23, 2001 order stating, "This matter is ended."

- 9 -

Moreover, we have held that "'the rules and statutes that presently express the [circuit] court's authority to appoint guardians ad litem are not exclusive sources of that power. Rather they are non-exclusive codifications of an equitable power and responsibility dating back to chancery days.'" Verrocchio, 16 Va. App. at 318-19, 429 S.E.2d at 485 (quoting Stewart v. Superior Court, 787 P.2d 126, 129 (Ariz. 1989)). The Court based this determination upon the common law doctrine of parens patriae, which is "defined as that power of the Commonwealth to watch over the interests of those who are incapable of protecting themselves." Id.

In Verrocchio, we recognized that "[i]n child custody cases, the equitable nature of this doctrine focuses the power of the court on the best interests of the child," id., noting that "[t]his protective power, which is unique to those cases dealing with the rights and interests of children, includes the long established practice of appointing a guardian ad litem to protect the best interests of a child upon the chancellor's determination that such appointment is necessary." Id. at 319, 429 S.E.2d at 485.

"We are mindful, however, that despite the great need for a circuit court to have the power to appoint a guardian ad litem in an appropriate case, '[a] trial court must have a cognizable basis for granting equitable relief.'" Id. at 317-18, 429 S.E.2d at 484 (quoting Tiller v. Owen, 243 Va. 176, 179, 413 S.E.2d 51, 53

- 10 -

(1992)).  Furthermore, it must be remembered that a guardian's duties are judicial, rather than caretaking.

Thus, "[t]he obligation to comply with the statutory scheme that has been designed by the legislature to protect parents and children cannot be abandoned by a judge under the guise of seeking 'to promote the best interests of a child.'"  Willis v. Gamez, 20 Va. App. 75, 82, 455 S.E.2d 274, 278 (1995).  Instead, "the established practice is that a guardian ad litem may be appointed after a trial judge makes a preliminary finding that the best interests of the child require such appointment."  Verrocchio, 16 Va. App. at 317, 429 S.E.2d at 484.  Such interests may require affirmative judicial action on the part of the guardian ad litem in properly fulfilling his or her duties.  See Stanley v. Fairfax County Dep't of Soc. Serv., 242 Va. 60, 62, 405 S.E.2d 621, 622 (1991) ("[A] guardian ad litem may file affirmative pleadings necessary to protect the ward's interest.").

Here, the court made the appropriate factual determination.  Indeed, both the J&DR and circuit courts specifically found that this was a "foster care prevention case," requiring the continued intervention of the court, through the guardian ad litem, to protect the best interests of the children at issue.  Under these circumstances, we find no error in the court's order directing the continued appointment of the guardian ad litem.

III.

Ferguson next contends that the court lacked the authority to allow the guardian ad litem, by way of its order, to utilize staff members to carry out his duties. Once again, we disagree.

Code § 16.1-266.1 states the minimum criteria for attorneys appointed as guardians ad litem as "(i) [a] license or permission to practice law in Virginia, (ii) current training in the roles, responsibilities and duties of guardian ad litem representation, (iii) familiarity with the court system and general background in juvenile law, and (iv) demonstrated proficiency in this area of the law." Furthermore,

> [t]he nature of the duties of a guardian ad litem was addressed by this Court in Norfolk Division of Social Services v. Unknown Father, 2 Va. App. 420, 345 S.E.2d 533 (1986), where we emphasized that [a] guardian ad litem is required to represent vigorously the infant or other person under a disability, fully protecting that individual's interests and welfare.

Stanley v. Dep't of Social Services, 10 Va. App. 596, 603, 395 S.E.2d 199, 202-03 (1990), aff'd by Stanley v. Fairfax County Dept. of Social Services, 242 Va. 60, 405 S.E.2d 621 (1991); see also Rule 8:6. "To discharge this responsibility properly, a guardian is expected to 'investigate thoroughly' and 'carefully examine [] the facts surrounding the case.'" Doe v. Doe, 15 Va. App. 242, 245, 421 S.E.2d 913, 915 (1992) (quoting Ruffin v. Commonwealth, 10 Va. App. 488, 495, 393 S.E.2d 425, 429 (1990)) (omission in original).

Ferguson has offered no authority, nor can we find any, standing for the proposition that a guardian <u>ad</u> <u>litem</u> is barred, in an appropriate case, from utilizing court-approved or designated staff, in assisting with fulfilling his or her obligations in that role.  It is the guardian <u>ad</u> <u>litem</u> who retains the ultimate responsibility and accountability to the court in carrying out his or her role in the manner required by the court, as well as the applicable statutory and judicial mandates. Accordingly, on the facts presented in this case where the staff member at issue possessed special expertise, we find no error in the court's order directing Ferguson and Grubb to permit the guardian <u>ad</u> <u>litem</u> and a member of his staff to visit their homes on an unannounced or announced basis, for the purposes stated in the court's order.

For the reasons stated above, we affirm the judgment of the circuit court.

<u>Affirmed.</u>