COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Beales
Argued at Alexandria, Virginia


ALLEN LEWIS

v.        Record No. 2575-06-4

CULPEPER COUNTY DEPARTMENT
 OF SOCIAL SERVICES

OPINION BY
JUDGE LARRY G. ELDER
JULY 31, 2007


FROM THE CIRCUIT COURT OF CULPEPER COUNTY
John R. Cullen, Judge

V. R. Shackelford, III (Shackelford, Thomas & Gregg, P.L.C., on
briefs), for appellant.

Robert F. Beard for appellee.

J. Michael Sharman (Commonwealth Law Offices, P.C., on brief),
Guardian *ad litem* for the infant child.


Allen Lewis appeals from a decision terminating his parental rights to his daughter, V.L.

On appeal, he contends the circuit court improperly exercised jurisdiction over the matter

following entry of a nonsuit at the request of the Culpeper County Department of Social Services

(DSS). He argues that DSS was instead required to refile in the juvenile and domestic relations

district court. He also contends that DSS failed to file a foster care service plan documenting

that termination of his parental rights was in V.L.'s best interests. We conclude the circuit court

lacked jurisdiction over the petition filed after DSS's nonsuit. Thus, we vacate the order

terminating Lewis's parental rights to V.L. and dismiss the petition. Because we dismiss, we do

not consider Lewis's claim that the foster care plan DSS filed failed to document that terminating

Lewis's parental rights was in V.L.'s best interests.

I.

BACKGROUND[1]

V.L. was born on January 24, 2005, at a time when her older brother, A.L., was already in the custody of DSS and living in a foster home. V.L.'s mother, Sally Butler, had left a court-ordered substance abuse program approximately two months prior to giving birth to V.L. and voluntarily relinquished custody of V.L. to DSS two days after V.L.'s birth. The foster care plan prepared by a DSS case worker on January 28, 2005, indicated Ms. Butler signed a permanent entrustment agreement with DSS and "wishe[d] to see [V.L.] placed and adopted by the same foster family that is caring for [A.L.]," Ms. Butler's older child. The plan noted that at the time Butler entrusted V.L. to DSS, "services were available" to Butler but "she chose not to receive them by leaving her treatment program." It also noted that when V.L. was born, Butler tested positive for cocaine and admitted to hospital personnel that she used cocaine, amphetamines, marijuana, and alcohol while pregnant with V.L. As to Lewis, the plan indicated only that "[f]ather was incarcerated[;] therefore he did not take part in the planning."

On July 1, 2005, DSS filed in the juvenile and domestic relations district court (J&DR court) a petition for the involuntary termination of Lewis's parental rights to V.L. On August 23, 2005, the J&DR court granted DSS's petition terminating Lewis's parental rights, and Lewis

---

[1] Both DSS and the child's guardian *ad litem* contend this Court should not consider the appeal because Lewis failed to include all relevant material in the appendix, particularly the foster care service plan and the transcript of the trial court's ruling from the bench. However, because the relevant evidence and transcript are part of the record on appeal, we consider Lewis's questions presented. See Rule 5A:25(c), (h) (providing that the "appendix shall include" specified items and that "[i]t will be assumed that the appendix contains everything germane to the question presented" but that "[t]he Court of Appeals *may* . . . consider other parts of the record" (emphasis added)); see also Patterson v. City of Richmond, 39 Va. App. 706, 717, 576 S.E.2d 759, 764-65 (2003) (noting importance of presenting an appendix that contains all parts of record "essential to the resolution of the issue" and stating that in absence of certain exhibits, "we will not decide the issue," but not discussing provision of Rule 5A:25(h) permitting court, in its discretion, to consult material contained in record but not in appendix).

appealed.  At a hearing in the circuit court on January 3, 2006, on appeal of case number "J&DR 2005-C-174," DSS moved to nonsuit the termination petition.  The trial court granted the request and entered an order to that effect on February 10, 2006.

On February 9, 2006, DSS filed a new petition for involuntary termination of Lewis's parental rights, indicating Lewis was an inmate at Haynesville Correctional Center and had "a projected release date" of June 15, 2007.  DSS filed that petition in the circuit court rather than the J&DR court.

Lewis, through his guardian *ad litem*, moved to dismiss the termination petition filed in circuit court, alleging that pursuant to Code § 16.1-241, the J&DR court was the only court with jurisdiction over the termination petition following DSS's nonsuit.  He argued that although Code § 16.1-244 provides the J&DR court and the circuit court with concurrent jurisdiction in certain matters, it did not cover termination proceedings and that, pursuant to the nonsuit statute and Code § 16.1-241(A)(5), the J&DR court was the only court with original jurisdiction over a termination petition, even following a nonsuit in the circuit court.  The circuit court denied the motion to dismiss.

Lewis also objected to the termination proceedings on the ground that no foster care plan had been filed that "document[ed] termination of [Lewis's] parental rights as being in the best interests of the child."  He argued the foster care plan of January 28, 2005, was "an appropriate foster care plan for [Sally Butler, V.L.'s mother]," but was "not an appropriate foster care plan that deals with [Lewis's] rights."  The court treated the objection as a motion to strike DSS's evidence and denied it.

The trial court ultimately ruled that clear and convincing evidence supported termination based on both (1) what it found to be Lewis's failure, without good cause, to remedy substantially the conditions that led to or required V.L.'s foster care placement notwithstanding

appropriate efforts, and (2) the prior termination of Lewis's residual parental rights to another of his children, V.L.'s older brother, A.L.[2]  The court also noted the uncertainty that Lewis would be able to assume care for V.L. even upon his release from incarceration.

II.

ANALYSIS:  JURISDICTION FOLLOWING NONSUIT

Code § 8.01-380 provides in relevant part as follows:

> After a nonsuit no new proceeding on the same cause of action or against the same party shall be had in any court other than that in which the nonsuit was taken, unless that court is without jurisdiction, or not a proper venue, or other good cause is shown for proceeding in another court, or when such new proceeding is instituted in a federal court.

Lewis contends that the circuit court lacked authority to act on DSS's termination petition filed February 9, 2006, because, under the language of Code § 8.01-380, "that court [was] without jurisdiction."  We agree.

Code § 16.1-241 provides in relevant part as follows:

> Except as hereinafter provided, each [J&DR] court shall have, within the limits of the territory for which it is created, exclusive original jurisdiction . . . over all cases, matters and proceedings involving:
>
> A.  The custody, visitation, support, control or disposition of a child:
>
> *        *        *        *        *        *        *
>
> 5.  Where the termination of residual parental rights and responsibilities is sought.  In such cases jurisdiction shall be concurrent with and not exclusive of courts having equity jurisdiction [e.g., circuit courts], as provided in § 16.1-244.

---

[2] The termination of Lewis's parental rights to A.L. was appealed and was reversed by this Court on December 12, 2006.  See Lewis v. Sharman, G.A.L., No. 1198-06-4 (Va. Ct. App. Dec. 12, 2006).  However, on appeal, Lewis has not asserted this reversal as a basis for reversal in his case involving V.L.

Code § 16.1-244 provides, *inter alia*, that "[n]othing contained in this law shall deprive any other court of the concurrent jurisdiction . . . to determine the custody, guardianship, visitation or support of children when custody, guardianship, visitation or support is incidental to the determination of causes pending in such courts."  Code § 16.1-244(A).  In a suit for divorce, for example, an issue of  "custody, guardianship, visitation or support of children" might qualify as incidental.  See id. (setting out impact of circuit court's exercise of this "incidental" jurisdiction in divorce suit on juvenile court's ongoing jurisdiction).

Interpreting the interplay between Code §§ 16.1-241 and -244 in Willis v. Gamez, 20 Va. App. 75, 455 S.E.2d 274 (1995), we stated:

> [A]lthough concurrent jurisdiction to terminate parental rights might exist in some cases, the record does not establish the circuit court's jurisdiction in this case.  Even if we assume that a termination of residual parental rights involves the "custody, guardianship, visitation or support of children," the record in this case does not establish that a cause was pending in the circuit court to which the father's petition would be "incidental" to a determination of that cause [sic].

Id. at 80, 455 S.E.2d at 277; see Church v. Church, 24 Va. App. 502, 505-08 & n.2, 483 S.E.2d 498, 499-501 & n.2 (1997) (reversing trial court's conclusion that Code §§ 16.1-241(A)(5) and 16.1-244 gave court granting divorce jurisdiction to terminate parental rights in same proceeding).

Similarly, nothing in the record in DSS's case against Lewis concerning V.L. indicates that any cause was pending in the circuit court to which the termination of Lewis's parental rights to V.L. might be "incidental."  The only proceeding ever pending in the circuit court was the termination petition itself.  Thus, the circuit court had no jurisdiction to entertain DSS's new termination petition unless some sort of "residual" circuit court jurisdiction survived the granting of the nonsuit.

DSS contends that when Lewis noted his appeal of the J&DR court's ruling on the first termination petition, the circuit court's acquisition of jurisdiction to try the matter *de novo* constituted the acquisition of original jurisdiction and that the ability to exercise this original jurisdiction survived DSS's taking of the nonsuit. It cites Thomas Gemmell, Inc. v. Svea Fire & Life Insurance Co., 166 Va. 95, 184 S.E. 457 (1936), for this proposition.

We disagree that Gemmell supports such an argument. Gemmell involved a nonsuit taken following a *de novo* appeal. The Court noted that a nonsuit "is unsuited to pure appellate procedure" but explained that a nonsuit might nevertheless be taken in a *de novo* appeal because "[a] court which hears a case *de novo* . . . acts not as a court of appeals but as one exercising original jurisdiction." Id. at 97-98, 184 S.E. at 458. The Supreme Court did not hold that a court hearing an appeal *de novo* may exercise original jurisdiction following a nonsuit even though it lacked original jurisdiction in the first instance. We are aware of no case or statute that would support such a result.

Under settled principles,

> "An appeal which brings up the entire cause for trial *de novo* in the appellate court operates to annul the [district court's] judgment, in the absence of a statute providing otherwise." 2 R.C.L., p. 118.
>
> "Where the effect of an appeal is to transfer the entire record to the appellate court for a retrial as though originally brought therein, the judgment appealed from is completely annulled, and is not thereafter available *for any purpose*." 16 R.C.L., p. 406.

Id. at 99, 184 S.E. at 458 (emphasis added). Similarly, the taking of a nonsuit as to a cause of action not only "carries down [the] previous rulings and orders in the case" but also "leaves the situation *as if the suit had never been filed*." 6A Michie's Jurisprudence, Dismissal, Discontinuance and Nonsuit § 30, at 216 (2001) (emphasis added); see also Dalloul v. Agbey, 255 Va. 511, 515, 499 S.E.2d 279, 282 (1998) (holding entry of nonsuit order rendered "case . . .

- 6 -

concluded as to all claims and parties"). And as the Supreme Court recognized in Gemmell, "'[t]he right of the plaintiff to take a nonsuit or a dismissal of his suit extends to the appellate court on appeal from a decision of a magistrate and trial *de novo*.'" 166 Va. at 99, 184 S.E. at 458 (quoting 6 Encyclopedia of Pleading and Practice, p. 867). Thus, absent some controlling authority to the contrary, where a plaintiff who prevailed in the district court takes a nonsuit in the defendant's *de novo* appeal in circuit court, the combined effect of the principles applicable to nonsuits and *de novo* appeals is to nullify the entire suit as if it had never existed in either court.

Here, DSS has cited no statute or case decision, and we have found none, that we interpret as either preventing Lewis's *de novo* appeal from annulling the J&DR court's ruling or reviving that ruling when the circuit court granted DSS's request for a nonsuit. Further, the nonsuit statute, Code § 8.01-380, expressly provides that a new proceeding following a nonsuit may not be filed in the court in which the nonsuit was taken if "that court is without jurisdiction." As the Virginia Supreme Court has recognized, "the purpose of the limitation contained in Code § 8.01-380(A) [is] to prevent a plaintiff from 'forum-shopping.'" Moore v. Gillis, 239 Va. 239, 241, 389 S.E.2d 453, 454 (1990). The statute contains no indication of legislative intent to override other statutory provisions delineating the subject matter jurisdiction of various courts. See Code § 8.01-380(A) ("After a nonsuit no new proceeding on the same cause of action or against the same party shall be had in any court other than that in which the nonsuit was taken, *unless that court is without jurisdiction . . . .*" (emphasis added)); cf. Connor v. Rose, 252 Va. 57, 58, 471 S.E.2d 478, 478-79 (1996) (holding that where plaintiff took nonsuit in general district court in action seeking damages of $4,000 and refiled in circuit court against same defendant on same cause of action but sought damages of $11,000, an amount in excess of district court's jurisdictional limit, circuit court was proper forum for second action).

On these facts, the circuit court had jurisdiction only over the *de novo* appeal of a termination ruling made in J&DR court. Following Lewis's appeal and DSS's nonsuit, the J&DR court's underlying termination ruling ceased to exist and did not provide a basis for the circuit court's exercise of jurisdiction over the termination petition filed therein on February 9, 2006. Thus, the circuit court lacked jurisdiction to issue the order terminating Lewis's parental rights to V.L.

### III.

For these reasons, we hold the circuit court lacked jurisdiction over the petition filed after DSS's nonsuit and erred in terminating Lewis's parental rights. We vacate the order terminating Lewis's parental rights to V.L. and dismiss the petition. Because we dismiss, we do not consider Lewis's claim that the foster care plan DSS filed failed to document that terminating Lewis's parental rights was in V.L.'s best interests.[3]

Reversed and dismissed.

---

[3] See Code § 16.1-283 (providing that a court "may terminate the residual parental rights of one parent without affecting the rights of the other parent" and that "[n]o petition seeking termination . . . shall be accepted by the court prior to the filing of a foster care plan . . . which documents termination of residual parental rights as being in the best interests of the child"); Strong v. Hampton Dep't of Soc. Servs., 45 Va. App. 317, 322, 610 S.E.2d 873, 876 (2005) (holding due process requires strict adherence to statute requiring filing of plan documenting that termination of parent's parental rights is in child's best interests in order to "guarantee[] proper notice" to that parent); cf. Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992) (holding that "long-term incarceration does not, *per se*, authorize termination of parental rights" but that "it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination").