# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **2nd** *day of* **March, 2010**.

Dolores Davis, Appellant,

against          Record No. 1697-08-4
Circuit Court Nos. CL-2008-5653

County of Fairfax, Appellee.

Upon a Rehearing En Banc

Before Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley, Petty, Beales, Powell and Alston

Phillip B. Leiser (Leiser, Leiser & Hennessy, PLLC, on brief), for appellant.

Erin Sylvester Mellen, Assistant Commonwealth's Attorney (Raymond F. Morrogh, Commonwealth's Attorney; Office of the Commonwealth's Attorney for Fairfax County, on brief), for appellee.


This appeal, which involves a civil forfeiture action brought pursuant to Code § 3.1-796.115, is before the Court of Appeals by virtue of an order of the Virginia Supreme Court providing as follows:

> It appears that [the Supreme Court of Virginia] does not have jurisdiction over this case. Code § 3.1-796.115(C). Accordingly, the appellee's motion is granted and the case hereby is transferred to the Court of Appeals of Virginia pursuant to Code § 8.01-677.1.[1]

Davis v. Fairfax County, No. 081825 (Va. Oct. 29, 2008) (footnote added). Based on the Supreme Court's prior determination in the instant case, we lack authority to conduct an independent review of the issue of our jurisdiction over this appeal. But see Settle v. Commonwealth, 55 Va. App. 212, 217-23, 685 S.E.2d 182, 184-87 (2009) (holding the Court of Appeals lacks jurisdiction over civil

---

[1] Appellant's counsel candidly admitted at oral argument that he had been unsure which Court had jurisdiction over this appeal when he filed his notice and that, as a result, he filed appeals in both this Court and the Supreme Court. By order of October 9, 2008, this Court transferred the appeal filed with us to the Supreme Court. Via entry of the October 29, 2008 order quoted in the text, the Supreme Court transferred the appeal back to us.

forfeiture actions under Code § 3.1-796.115 and transferring the appeal to the Supreme Court after concluding that the Supreme Court's holding in the instant case, Davis, was not binding in Settle because "the grounds upon which the Davis transfer [was] based [were] not discernable from the four corners of the order" as required by Sheets v. Castle, 263 Va. 407, 412, 559 S.E.2d 616, 619 (2002), in order for the action to "'carr[y] . . . precedential value'" in other cases).

By memorandum opinion dated August 4, 2009, a divided panel of this Court affirmed the judgment of the trial court. One of the issues before the panel was whether the County's civil forfeiture petition, following its nonsuit of Davis's *de novo* appeal in the circuit court, should have been refiled in the district court or the circuit court. The panel, concluding it was bound by the decision in Lewis v. Culpeper County Department of Social Services, 50 Va. App. 160, 647 S.E.2d 511 (2007), held unanimously that the petition was properly refiled in the district court. Judge Powell filed a concurring opinion to express her view that the panel decision in Lewis, while binding in the panel proceedings in the instant case, had been wrongly decided and should be overturned.

Upon appellant's petition for rehearing *en banc* asserting that the nonsuit issue had been wrongly decided, we stayed the mandate of the panel decision and granted rehearing *en banc* on the challenged issue. Upon rehearing *en banc*, it is ordered that the stay of the August 4, 2009 mandate is lifted. Because appellant petitioned for rehearing on only the nonsuit issue, we do not address the other issues that were before the panel, and we reinstate the panel opinion as to those issues. See Ferguson v. Commonwealth, 51 Va. App. 427, 432-33, 658 S.E.2d 692, 695 (2008) (en banc). On the nonsuit issue, we adopt the reasoning in Part I.A. of the panel decision. We also conclude Lewis was properly decided and decline appellant's invitation to overrule it. Thus, we resolve the nonsuit issue in the County's favor and affirm the judgment of the trial court.

For the reasons stated in the panel concurring opinion, Judges Powell and Alston would overrule Lewis and, therefore, they dissent.

This order shall be certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **15th** *day of* **September, 2009**.

Dolores Davis, Appellant,

  against               Record No. 1697-08-4
                            Circuit Court No. CL-2008-5653

County of Fairfax, Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley, Petty, Beales, Powell and Alston

On August 14, 2009 came the appellant, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on August 4, 2009, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on August 4, 2009 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established: Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellee shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellee's brief is filed. The appellant shall attach as an

addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellant shall file twelve additional copies of the

appendix previously filed in this case.


A Copy,

    Teste:

             Cynthia L. McCoy, Clerk

             *original order signed by a deputy clerk of the*
By:  *Court of Appeals of Virginia at the direction*
       *of the Court*

             Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Powell
Argued at Alexandria, Virginia


DOLORES DAVIS

v.      Record No. 1697-08-4

COUNTY OF FAIRFAX

MEMORANDUM OPINION[*] BY
JUDGE LARRY G. ELDER
AUGUST 4, 2009


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Charles J. Maxfield, Judge

Phillip B. Leiser (Leiser, Leiser & Hennessy, PLLC, on briefs), for
appellant.

Erin L. Sylvester, Assistant Commonwealth's Attorney (Raymond F.
Morrogh, Commonwealth's Attorney; Office of the
Commonwealth's Attorney for Fairfax County, on brief), for
appellee.


Dolores Davis (appellant) appeals from a bench trial ruling of the circuit court

concluding, pursuant to Code § 3.1-796.115,[2] that the twenty animals in her custody were

"deprived . . . of adequate care, rendering a direct and immediate threat to their safety and

health." On appeal, appellant contends that following the Commonwealth's prior nonsuit of the

charges in a *de novo* appeal to the circuit court, the Commonwealth was required to refile those

charges in circuit court rather than district court. She also contends that the circuit court erred in

refusing to dismiss the refiled petition where the Commonwealth refiled it before the nonsuit

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[2] After all proceedings below had been completed, Title 3.1 was repealed, revised, and
reenacted as Title 3.2. See 2008 Va. Acts, ch. 860 (repealing Title 3.1 effective October 1,
2008); 2008 Va. Acts, ch. 510 (reenacting Code § 3.1-796.115, with amendments, as Code
§ 3.2-6569).

order in the original suit had been entered.  She contends further that a pet owner charged

pursuant to Code § 3.1-796.115 is entitled to the constitutional protections of the Double

Jeopardy Clause.  In addition, she argues the evidence was insufficient to prove her unfitness to

own pets.  Finally, she contends the circuit court erred in "bifurcat[ing] the trial on the petition

. . . , reserving for a later date the issue of assessment of costs against [appellant]" and allowing

the Commonwealth to present evidence of its costs on that subsequent date.  We hold the court

committed no substantive error, and we affirm.

I.

A.

NONSUIT AND TIME OF REFILING

As to the proper location for the refiling of the Code § 3.1-796.115 petition following

nonsuit in the circuit court, we conclude the County properly refiled in the district court and,

thus, that the circuit court acquired jurisdiction over the matter through the County's *de novo*

appeal.  As appellant acknowledges on brief, we held in Lewis v. Culpeper County Department

of Social Services, 50 Va. App. 160, 167, 647 S.E.2d 511, 514 (2007), that

> absent some controlling authority to the contrary, where a plaintiff
> who prevailed in the district court takes a nonsuit in the
> defendant's *de novo* appeal in circuit court, the combined effect of
> the principles applicable to nonsuits and *de novo* appeals is to
> nullify the entire suit as if it had never existed in either court.

Although appellant disagrees with our reasoning in Lewis, the holding of Lewis remains binding

precedent unless overturned by the Supreme Court or this Court sitting *en banc*.  See, e.g.,

Johnson v. Commonwealth, 252 Va. 425, 429-30, 478 S.E.2d 539, 541 (1996).

We also conclude the fact that the second petition was refiled on the same day as, and

shortly prior to, the entry of the order nonsuiting the first petition was not fatal to the district and

circuit courts' acquisition of subject matter jurisdiction over the second petition.  Appellant cites

no legal authority supporting such a proposition, and we are aware of none. Cf. Saunders v. Commonwealth, 12 Va. App. 154, 155, 402 S.E.2d 708, 709 (1991) (holding that a notice of appeal filed after oral pronouncement of sentence but prior to entry of the sentencing order takes effect upon entry of the final order). If the appeal of the original petition in circuit court had remained pending there long enough after the filing of the new district court petition, appellant might successfully have moved to dismiss the refiled district court petition, but the circuit court nonsuit order was entered within minutes or hours after the filing of the new petition in district court, and appellant apparently did not obtain a dismissal within that time. The brief overlap in the existence of the two petitions did not prevent the district court from acquiring subject matter jurisdiction over the refiled petition.

B.

DOUBLE JEOPARDY

Double jeopardy principles protect against three distinct abuses: "(1) a second *prosecution* for the same offense after acquittal; (2) a second *prosecution* for the same offense after conviction; and (3) multiple *punishments* for the same offense." Payne v. Commonwealth, 257 Va. 216, 227, 509 S.E.2d 293, 300 (1999) (emphases added)); see Stephens v. Commonwealth, 263 Va. 58, 62, 557 S.E.2d 227, 229 (2002) (noting that the double jeopardy provisions of the Virginia and United States Constitutions are coextensive).

> The Clause protects only against the imposition of multiple *criminal* punishments for the same offense . . . in successive proceedings.
> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." [United States v.] Ward, [448 U.S. 242, 248, 100 S. Ct. 2636, 2641, 65 L. Ed. 2d 742, 749 (1980)]. Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," id. at

> 248-249, [100 S. Ct. at 2641, 65 L. Ed. 2d at 749], as to "transform
> what was clearly intended as a civil remedy into a criminal
> penalty," Rex Trailer Co. v. United States, 350 U.S. 148, 154, [76
> S. Ct. 219, 222, 100 L. Ed. 149, 153] (1956).

Hudson v. United States, 522 U.S. 93, 99, 118 S. Ct. 488, 493, 139 L. Ed. 2d 450, 458-59 (1997) (emphasis added) (citations omitted). "In making this latter determination," a court may consider, *inter alia*, "'whether [the penalty] comes into play only on a finding of scienter'" and "'whether the behavior to which it applies is already a crime.'" Id. at 99, 118 S. Ct. at 493, 139 L. Ed. 2d at 459 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169, 83 S. Ct. 554, 567, 9 L. Ed. 2d 644, 661 (1963)). "'[O]nly the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. at 100, 118 S. Ct. at 493, 139 L. Ed. 2d at 459 (quoting Ward, 448 U.S. at 249, 100 S. Ct. at 2641, 65 L. Ed. 2d at 749).

Appellant contends that a pet owner against whom a petition is filed pursuant to Code § 3.1-796.115 is entitled to the double jeopardy protections afforded by both the United States and Virginia Constitutions. Appellant relies in part on the language of subsection (C), which provides that "[t]he procedure for appeal and trial shall be the same as provided by law for misdemeanors" and requires application of "the criminal standard of proof—beyond a reasonable doubt." She argues any ambiguity concerning whether Code § 3.1-796.115 is a criminal or civil proceeding should be resolved in her favor. Based on the language of Code § 3.1-796.115 and the statutory scheme of which it is a part, we reject appellant's claim that the instant proceedings against her under Code § 3.1-796.115 constituted double jeopardy.

Code § 3.1-796.115 authorizes the "seiz[ure] and impound[ment of] any animal that has been abandoned, has been cruelly treated, or is suffering from an apparent violation of this chapter that has rendered the animal in such condition as to constitute a direct and immediate threat to its life, safety or health." Code § 3.1-796.115(A). That statute requires the officer

effecting the seizure to petition the general district court for a hearing to determine whether the animal has, in fact, been abandoned, cruelly treated, or provided inadequate care, and the officer seizing the animal must provide for its care during the pendency of the hearing. Id. (A), (B). If the owner is determined to have abandoned, cruelly treated, or provided inadequate care for the animal prior to the seizure, the owner shall be required to pay all reasonable expenses incurred in caring for the animal until it can be disposed of in accordance with the provisions of the code section. Code § 3.1-796.115(F). An owner found to have abandoned, abused, or neglected a seized animal also may be prohibited from possessing companion animals until a court finds "the cause for the prohibition has ceased to exist." Code § 3.1-796.115(G), (I). Code § 3.1-796.115 does not indicate that it defines a crime or proscribes a penalty therefor. Although the owner of an animal found to be abandoned, abused, or neglected must pay for the animal's care and the animal may be sold, any proceeds from the sale remaining after expenses for the sale and care have been paid are to be returned to the animal's owner. Code § 3.1-796.115(F), (I).

Code § 3.1-796.122, by contrast, specifically provides, *inter alia*, that "[a]ny person who . . . deprives any animal of necessary food, drink, shelter or emergency veterinary treatment . . . *shall be guilty of a Class 1 misdemeanor*." Code § 3.1-796.122(A) (emphasis added). It also specifically states that, "[i]n addition to the *penalties* provided in subsection A," i.e., those imposed for a Class 1 misdemeanor, "the court may in its discretion require any person *convicted* of a violation of subsection A to attend an anger management or other appropriate treatment program or obtain psychiatric or psychological counseling . . . [and] may impose the costs of such a program or counseling upon the person convicted." Code § 3.1-796.122(F) (emphases added). A comparison of the two code sections and their respective contents makes clear that Code § 3.1-796.115 sets out the administrative process by which an animal warden or officer may seize an animal alleged to have been abused or neglected and provide for its care until the

- 5 -

propriety of the seizure is resolved, whereas Code § 3.1-796.122 defines certain abuse and neglect of an animal as a crime and prescribes the penalty for the commission of that crime. Thus, Code § 3.1-796.115 is civil in nature, and Code § 3.1-796.122 defines a crime.

The language of Code § 3.1-796.115(C) providing that "[t]he procedure for appeal and trial shall be the same as provided by law for misdemeanors" and requiring application of the traditionally criminal standard of proof "beyond a reasonable doubt" does not support a different result. The Virginia Supreme Court considered the meaning of almost identical language in another statute—added by the General Assembly to the predecessor of Code § 18.2-268.4, which addresses the procedure to be followed when a person arrested for driving while intoxicated refuses to permit the taking of blood or breath samples pursuant to Virginia's implied consent law. See Commonwealth v. Rafferty, 241 Va. 319, 321-22, 402 S.E.2d 17, 18-19 (1991) (decided under a local ordinance containing "essentially the same language" as the state refusal statute). Rejecting the defendant's argument that this language was intended to modify the Court's prior ruling that the statute provided for a civil proceeding and to make refusal a criminal offense, the Court reasoned as follows:

> If the General Assembly intended to [make refusal a criminal offense], the 1977 amendment simply could have provided that an unreasonable refusal to submit to [a blood or breath] test is a misdemeanor and not an administrative and civil proceeding. Additionally, *such an amendment would have given the right to a jury trial and required proof beyond a reasonable doubt, without the necessity of mentioning them, because both are inherent in criminal prosecutions*.

Id. at 322, 402 S.E.2d at 19 (emphasis added).

Similarly here, when the General Assembly added almost identical language to Code § 3.1-796.115(C) in 1993, see 1993 Va. Acts, ch. 119, it was on notice of the Court's determination that this language was not necessary in a criminal matter. See, e.g., Charles v. Commonwealth, 270 Va. 14, 19, 613 S.E.2d 432, 434 (2005) (recognizing the principle that the

legislature is presumed to be aware of existing rules and case law when enacting legislation). Thus, by adding this language to Code § 3.1-796.115, the General Assembly implicitly recognized that the nature of the underlying proceeding in such animal seizure cases is civil rather than criminal.

We also conclude that the civil penalty at issue in this case is not "'so punitive in either purpose or effect," [Ward, 48 U.S. at 248, 100 S. Ct. at 2641, 65 L. Ed. 2d at 749], as to 'transform what was clearly intended as a civil remedy into a criminal penalty,' Rex Trailer Co[, 350 U.S. at 154, 76 S. Ct. at 222, 100 L. Ed. 2d at 153]." Hudson, 522 U.S. at 99, 118 S. Ct. at 493, 139 L. Ed. 2d at 459. Considering the Mendoza-Martinez factors listed above, we note both that Code § 3.1-796.115 does not require a finding of scienter and that the behavior at issue is clearly proscribed as a crime under a different statute, Code § 3.1-796.122. Further, as quoted above, although the owner of an animal found to be abandoned, abused, or neglected "shall be required" to pay for the animal's care, if the animal is sold, any proceeds from the sale remaining after expenses for the sale and care have been paid are to be returned to the animal's owner. See Code § 3.1-796.115(F). Although the expenses appellant was ordered to pay in this case totaled over $50,000, appellant had twenty animals in the County's care, and she made no allegation that the County's actions unreasonably prolonged the period of care required. Thus, we conclude the animal seizure statute was not so punitive in effect as to transform the civil remedy into a criminal penalty.

Accordingly, we conclude the instant proceeding against appellant under Code § 3.1-796.115—a civil statute in terms of both legislative intent and practical effect—did not constitute double jeopardy under either the United States or Virginia Constitution.

## C.

### EXPERT TESTIMONY AND THE SUFFICIENCY OF THE EVIDENCE

Appellant contends the evidence was insufficient to prove beyond a reasonable doubt that she "rendered her animals in a condition that constituted a direct and immediate threat to their . . . safety or health" as required to establish she violated Code § 3.1-796.115. She argues the County could not meet this burden of proof without expert testimony. Although the trial court's findings under that statute are administrative and do not constitute a criminal conviction, because the statute requires proof beyond a reasonable doubt, we examine the trial court's findings under the same standard of review we apply to criminal convictions. Under this standard, we view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the prevailing party, here the County. Brown v. City of Danville, 44 Va. App. 586, 591, 606 S.E.2d 523, 526 (2004).

Code § 3.1-796.115 required the trial court to conduct a "hearing . . . to determine whether the animal has been abandoned, has been cruelly treated, or has not been provided adequate care." Code § 3.1-796.115(A). Only the third standard, the provision of "adequate care," is at issue here. The General Assembly has expressly defined "adequate care" as "the responsible practice of good animal husbandry, handling, production, management, confinement, feeding, watering, protection, shelter, . . . [and] treatment, . . . appropriate for the age, species, condition, size and type of the animal and the provision of veterinary care when needed to prevent suffering or impairment of health." Code § 3.1-796.66. "Adequate shelter" is shelter that "is safe and protects each animal from injury, . . . physical suffering, and impairment of health," "is properly cleaned" and "enables each animal to be clean and dry." Id. Providing adequate shelter requires that "carcasses, debris, food waste and excrement are removed from the primary enclosure with sufficient frequency to minimize the animals' contact with the

above-mentioned contaminants" and that "the primary enclosure is sanitized with sufficient frequency to minimize odors and the hazards of disease." Id. The statutory definitions establish the standard of care, and under the facts of this case, expert testimony was not required to establish the breach of that standard. Cf. Beverly Enters.-Va., Inc. v. Nichols, 247 Va. 264, 269, 441 S.E.2d 1, 4 (1994) (in nursing home negligence case, holding that whether expert testimony is required depends upon the degree of specialized knowledge required to determine the applicable standard and apply it to the facts).

Further, the evidence, viewed in the light most favorable to the County, proved appellant failed to provide the animals at issue with "adequate care" and that this failure "rendered the animal[s] in such a condition as to constitute a direct and immediate threat to [their] . . . safety or health." Code § 3.1-796.115(A); see Code § 3.1-796.66 (defining "[d]irect and immediate threat" as "any clear and imminent danger to an animal's health, safety or life"). The County provided testimony from Officer Cook that when he approached appellant's residence for the first time, he could smell the odor of urine and feces while he was still about twenty feet away from the front door. Upon entering the house a day or two later, the officers noted the cats' litter boxes were "full" and that the "strong odor of urine and feces" permeated the house. The officers "observed fecal matter on the floor and other surfaces," and they took photographs that documented the presence of fecal matter throughout the house. Officer Cook testified the air quality was so bad that they "were required to wear 'Millenium Mask[s] and 'Tyvek' suits" to inspect the residence. They also photographed a wall showing several exposed wall studs "where the wall had been chewed." The photographs indicated that the drywall covering was missing to a height of two to four feet and that significant portions of the studs beneath had been gnawed away, as well.

At least one of the animals, a "sheltie dog," had matted feces in its fur and extremely long nails. Two other dogs, a "Newfoundland dog" and a pit bull, had tumors or skin conditions. Photographs of the "Newfoundland dog" showed both abrasions and an open sore. The chinchillas were "in cages with matted litter." One cat had a deep wound on its head where the officers saw it come into contact with an exposed light bulb, and another cat was quarantined in a bathroom and appellant admitted she knew the cat "was sick." She admitted that taking the animals to a veterinarian for care was "too difficult" and that she was merely "looking for a veterinarian that would come to her residence."

This evidence was sufficient to support a finding that appellant failed to provide adequate care for her animals. She failed to provide them with adequate shelter because "excrement" was not "removed from the primary enclosure[, her residence,] with sufficient frequency to minimize the animals' contact" with it; the enclosure was not "sanitized with sufficient frequency to minimize odors and the hazards of disease"; and the shelter provided did not "enable[] each animal to be clean." See Code § 3.1-796.66. The shelter also was not "safe" for the dogs, some of which were able to reach and chew on the drywall and exposed wall studs, and it was not safe for at least one of the cats, which came into repeated contact with an exposed light bulb, resulting in a "deep wound" on its head. See id. Finally, the evidence also supported a finding that appellant failed to provide some of the animals with "veterinary care when needed to prevent suffering or impairment of health," see id., as demonstrated by the two injured cats and two injured dogs and appellant's admission that the animals were not then under a veterinarian's care because it was "too difficult" to take them to an office for treatment. Although this evidence may not have been sufficient, without expert testimony, to establish that appellant's neglect posed a "clear and imminent danger" to the animals' *lives*, see id., it was more than

- 10 -

sufficient to support the trial court's finding that it endangered the health and safety of all of the animals.

Thus, the evidence supported the trial court's ruling that appellant was "unfit" to own her animals.

D.

CONTINUANCE AND PRESENTATION OF EVIDENCE OF ANIMAL CARE COSTS

Appellant contends the County's failure to prove in its case-in-chief the amount of its costs for caring for her animals was fatal to its request to recover that amount. She argues the trial court's allowing the County to present evidence of those costs in a subsequent proceeding constituted an improper "bifurcation" of those issues without her consent. We conclude the trial court did not abuse its discretion in allowing the County to present the challenged evidence.

Appellant relies on the holding in Lee v. Mulford, 269 Va. 562, 611 S.E.2d 349 (2005), which involved a jury trial on a contract dispute between private parties. Appellant's case, by contrast, involves a bench trial concerning a governmental entity's statutory entitlement to reimbursement upon certain factual findings. See Code § 3.1-796.115(F) ("The court *shall* order the owner of any animal determined to have been . . . deprived of adequate care to pay all reasonable expenses incurred in caring and providing for such animal [during the period of seizure of the animal by an animal control officer].") In the course of a single proceeding, the court determined both that the seizure of the animals was proper and, as a result, that the County was entitled to recover its expenses. In appellant's case, unlike in Lee, we need not decide whether the County was *entitled* to reopen its case and to present evidence of its expenses on a later date. Because the trial court in appellant's case ruled that the County *would* be permitted to reopen, we must decide only whether this ruling was an abuse of discretion. We hold that it was not.

Under settled principles, a "trial court ha[s] broad discretion to control the order of evidence before it," and it "[does] not abuse its discretion in permitting the Commonwealth to reopen its case to present additional evidence" after the court has expressed doubt about the sufficiency of the evidence before it. Lebedun v. Commonwealth, 27 Va. App. 697, 715, 501 S.E.2d 427, 436 (1998); see Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 440 (1998) (recognizing the inherent authority of a court, in a divorce case, to reopen the record to take additional evidence). "Although the trial judge is a neutral and impartial arbiter and should not abandon that role by becoming an advocate, the trial judge is not required to sit idly and observe a miscarriage of justice occur because one party inadvertently overlooks establishing a routine element of proof." Lebedun, 27 Va. App. at 716, 501 S.E.2d at 436. A decision whether to grant a continuance also rests in the sound discretion of the trial court. See, e.g., Novak v. Commonwealth, 20 Va. App. 373, 391-92, 457 S.E.2d 402, 410-11 (1995).

Here, the County requested an award of expenses for the care of the animals after the parties had concluded their evidence and the court had found appellant deprived them of adequate care. The trial court did not abuse its discretion in holding per the statute, before that hearing had concluded, that appellant would be responsible for those expenses and allowing the County to present evidence of the amount of those expenses at a second hearing held one week later. These rulings amounted to a variance in the order of proof and a brief continuance, neither of which constituted an abuse of the trial court's discretion on the facts of this case. Cf. Code § 3.1-796.115(C) ("The procedure for appeal and trial shall be the same as provided by law for misdemeanors."); Code § 19.2-295.1 (providing that "[i]n cases of trial by jury, upon a finding that the defendant is guilty of . . . a Class 1 misdemeanor, or upon a finding in the trial de novo of an appealed misdemeanor conviction that the defendant is guilty of a Class 1 misdemeanor, *a*

*separate proceeding* limited to the ascertainment of punishment shall be held . . . before the same jury" (emphasis added)).

## II.

We uphold the circuit court's ruling that the County properly refiled its petition in district court and that the timing of the refiling of that petition was not fatal to the district court's acquisition of jurisdiction. We also conclude that because Code § 3.1-796.115 is administrative in nature and did not result in the imposition of penalties so punitive in purpose or effect as to constitute a criminal punishment, appellant was not entitled to constitutional protections against double jeopardy. We hold further that the evidence was sufficient to support the seizure of her animals and the subsequent finding that she was unfit to own pets. Finally, we conclude the trial court did not err in holding she was responsible for the County's costs incurred in caring for the animals and in allowing the County to present evidence of those costs one week after the finding of her unfitness. Thus, we affirm.

<u>Affirmed.</u>

Powell, J., concurring.

I concur with the majority opinion. I write separately to address the issue raised in the first assignment of error regarding the effect of a nonsuit.

Citing Lewis v. Culpeper County Department of Social Services, 50 Va. App. 160, 647 S.E.2d 511 (2007), the majority holds that following a nonsuit in the circuit court, the County properly refiled its new suit in the district court. I believe Lewis was wrongly decided.

Code § 8.01-380 provides:

> After a nonsuit no new proceeding on the same cause of action or against the same party shall be had in any other court than that in which the nonsuit was taken, unless that court is without jurisdiction, or not a proper venue, or other good cause is shown for proceeding in another court . . . .

The majority in Lewis concluded that the interplay of Virginia's system of *de novo* appeals and nonsuits effectively "nullif[ies] the entire suit [on appeal] as if it never existed in either court." Lewis, 50 Va. App. at 167, 647 S.E.2d at 514. Thus, in circumstances where the circuit court's jurisdiction is derivative, a refiled suit must return to the court that had original jurisdiction. The majority relied on Thomas Gemmell, Inc. v. Svea Fire & Life Insurance Co., 166 Va. 95, 184 S.E. 457 (1936), for this proposition. For two reasons, I believe that the Lewis panel misconstrued Gemmell.

First, the Lewis panel's reading of the statute is strained. "The applicable statutory language quoted in Code § 8.01-380(A) is clear and unambiguous and, therefore, we apply its plain meaning." Conner v. Rose, 252 Va. 57, 58, 471 S.E.2d 478, 479 (1996). Code § 8.01-380(A) clearly states that "no new proceeding on the same cause of action or against the same party shall be had *in any other court than that in which the nonsuit was taken*." (Emphasis added). Thus, when a nonsuit is taken in circuit court, the statute by its terms requires that the case be refiled in circuit court. The only caveat is if the circuit court is without jurisdiction;

- 14 -

however, nothing in the statute indicates that the circuit court must have *original* jurisdiction. Therefore, once the circuit court acquired jurisdiction when the case was appealed, the circuit court retains that jurisdiction absent some procedural deprivation, such as failure to notify the non-appealing party.

Second, Gemmell clearly established that the circuit court does retain jurisdiction. The Supreme Court specifically stated that,

> "By perfecting the appeal from the justice's court the case was entirely removed from that court, and *only* the superior court had *thereafter* jurisdiction in the matter."

Gemmell, 166 Va. at 100, 184 S.E. at 459 (quoting Bullard v. McArdle, 33 P. 193, 194 (Cal. 1893)) (emphasis added).

By this language, the Supreme Court has unequivocally ruled that once the appeal is perfected, thereafter, *only* the superior court has jurisdiction. Therefore, the circuit court retains jurisdiction even after the nonsuit is filed and any subsequent filings must be in that court.

However, I recognize that Lewis is binding precedent. Therefore, I concur.