COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, McCullough and Senior Judge Bumgardner

SCOTT LEE HARDY

v.      Record No. 0869-14-3

CHARLOTTE M. POSTON

MEMORANDUM OPINION*
PER CURIAM
NOVEMBER 4, 2014

FROM THE CIRCUIT COURT OF SMYTH COUNTY
Deanis L. Simmons, Judge

(Joshua S. Cumbow; Johnson & Cumbow, on briefs), for appellant.

(Melissa S. Carrico; Sondra K. Alan, Guardian *ad litem* for the minor
children; Carrico Law PC, on brief), for appellee.


Scott Lee Hardy appeals an order approving the adoption of his children by Charlotte M.

Poston. Hardy argues that the trial court erred by (1) not dismissing the petition for adoption after

granting his motion to strike the petition for termination of his parental rights pursuant to Code

§ 16.1-283; and (2) finding clear and convincing evidence that he withheld his consent to the

adoption contrary to the best interests of the children. Upon reviewing the record and briefs of the

parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the

decision of the trial court. See Rule 5A:27.

BACKGROUND

Hardy is the biological father of J.H., who was born in November 2004, and N.H., who

was born in June 2007. Poston is Hardy's mother and the children's paternal grandmother.

On April 14, 2008, the circuit court in Berkeley County, West Virginia terminated the

biological mother's parental rights to the children and awarded custody of the children to Hardy.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On October 7, 2008, Poston received sole custody of the children and Hardy had visitation, pursuant to an agreed order entered by the Smyth County Juvenile and Domestic Relations District Court (JDR court). Hardy's visitation was later amended to supervised visitation, and approximately one year later, the court suspended his visitation.

On May 28, 2013, Poston filed a petition for adoption pursuant to Code § 63.2-1200 *et seq.* and a petition to terminate Hardy's parental rights pursuant to Code § 16.1-283. At that time, Hardy was incarcerated. Poston asserted that Hardy was unreasonably withholding his consent for adoption.

The parties appeared before the trial court on July 22, 2013. The trial court informed the parties that it "was of the opinion that it did not have jurisdiction to hear the matter on the Petition to terminate filed pursuant to § 16.1-283, but that [Poston] could proceed on the Petition for Adoption filed pursuant to 63.2-1200 et seq." The trial court appointed counsel for Hardy.

On October 22 and 30, 2013, the parties presented their evidence and argument to the trial court. At the conclusion of Poston's evidence, Hardy made a motion to strike on two grounds. He argued that Poston's evidence was insufficient to terminate his parental rights pursuant to Code § 16.1-283; the trial court took this argument under advisement. It denied his second argument that Poston failed to prove that he unreasonably withheld his consent to adoption. Hardy then testified on his own behalf. At the conclusion of all of the evidence, both parties and the guardian *ad litem* presented closing arguments.

On February 10, 2014, the trial court issued a letter opinion. It sustained Hardy's motion to strike that Poston did not present sufficient evidence to terminate his parental rights pursuant to Code § 16.1-283. The trial court considered the factors in Code § 63.2-1205 and held that Hardy was unreasonably withholding his consent to the adoption "to the detriment of the

children." On April 11, 2014, the trial court entered an order that granted Poston's petition to adopt the children. This appeal followed.

## ANALYSIS

### Assignment of error #1

Hardy argues that the trial court erred by not dismissing the petition for adoption after granting appellant's motion to strike the petition for termination of his parental rights pursuant to Code § 16.1-283.

Poston filed two pleadings with the trial court. First, she filed a petition for adoption pursuant to Code § 63.2-1200 *et seq.* Second, she filed a petition for termination of parental rights pursuant to Code § 16.1-283.

As the trial court correctly held, it did not have the authority to grant Poston's petition to terminate Hardy's parental rights pursuant to Code § 16.1-283. Pursuant to Code § 16.1-283(A), "[n]o petition seeking termination of residual parental rights shall be accepted by the court prior to the filing of a foster care plan, pursuant to § 16.1-281, which documents termination of residual parental rights as being in the best interests of the child."

"Under Virginia's statutory scheme, the circumstances providing authority for the termination of parental rights . . . are limited." Church v. Church, 24 Va. App. 502, 506, 483 S.E.2d 498, 500 (1997).

> The statutory scheme for the constitutionally valid termination of residual parental rights in this Commonwealth is primarily embodied in Code § 16.1-283. That scheme provides detailed procedures designed to protect the rights of the parents and their child. These procedures must be strictly followed before the courts are permitted to sever the natural and legal bond between parent and child.

Rader v. Montgomery Cnty. Dep't of Soc. Servs., 5 Va. App. 523, 526, 365 S.E.2d 234, 235-36 (1988).

"The obligation to comply with the statutory scheme that has been designed by the legislature to protect parents and children cannot be abandoned by a judge under the guise of seeking to 'promote the best interests of the child.'" Willis v. Gamez, 20 Va. App. 75, 82, 455 S.E.2d 274, 278 (1995) (citation omitted).

The trial court did not err in determining that it could not terminate Hardy's parental rights pursuant to Code § 16.1-283. Hardy argues that since Poston's petition for adoption referenced her petition for termination of his parental rights, the trial court should not have considered her petition for adoption.

Poston's petition for adoption indicates that she is proceeding under Code § 63.2-1200 *et seq.*, but also states, "A petition to terminate the biological father's parental rights is attached hereto." The fact that the petition to terminate Hardy's parental rights was attached to Poston's petition for adoption does not affect the trial court's ability to consider the petition for adoption pursuant to Code § 63.2-1200 *et seq.* Code § 63.2-1200 *et seq.* provides a different statutory scheme than Code § 16.1-283.

Contrary to Hardy's assertions, the relief requested by Poston in the petition for adoption was "leave to adopt said minor children, not hers by birth . . . ." She states in her petition for adoption that Hardy "has not indicated willingness to consent to said adoption." In its letter opinion, the trial court stated that on July 22, 2013, it gave notice to Hardy that Poston alleged he was unreasonably withholding his consent for adoption. Both Poston's petition and the trial court's oral statement advised Hardy that Poston's petition for adoption was filed pursuant to the adoption statutes, not the foster care and termination of parental rights statutes.

Code §§ 63.2-1203 and -1205 discuss how a court should proceed with an adoption when a biological parent withholds consent. This is the statutory scheme that the trial court followed when it granted Poston's petition for adoption, as explained in its letter opinion.

Accordingly, the trial court did not err in proceeding with the petition for adoption after granting the motion to strike on the petition for the termination of parental rights.

*Assignment of error #2*

Appellant argues that the trial court erred by finding clear and convincing evidence that Hardy withheld his consent to the adoption of the children contrary to their best interests.

"Where, as here, the court hears the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

Code § 63.2-1205 provides:

> In determining whether the valid consent of any person whose consent is required is withheld contrary to the best interests of the child, or is unobtainable, the circuit court or juvenile and domestic relations district court, as the case may be, shall consider whether granting the petition pending before it would be in the best interest of the child. The circuit court or juvenile and domestic relations district court, as the case may be, shall consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

"We have consistently held that to grant a petition for adoption over a birth parent's objection, there must be more than a mere finding that the adoption would promote the child's best interests." Copeland v. Todd, 282 Va. 183, 197, 715 S.E.2d 11, 19 (2011) (citing Malpass v. Morgan, 213 Va. 393, 398-99, 192 S.E.2d 794, 798-99 (1972)). "Virginia's statutory scheme for adoption, including Code §§ 63.2-1205 and -1208, defines the best interests of the child in

terms that require more expansive analysis than when the contest is between two biological parents." Id. at 199, 715 S.E.2d at 20.

The trial court considered the factors in Code § 63.2-1205 and made factual findings in light of those factors. Specifically, the trial court found that Hardy had not had custody of N.H. since he was a few weeks old, and N.H. was six years old at the time of the hearing. Hardy had not had custody of J.H. since she was approximately three years old, and J.H. was nine years old at the time of the hearing. The trial court held that Hardy's efforts to obtain custody of the children were not made in good faith because he did not "exert more action or effort . . . to actually comply with the Smyth County Juvenile Court's order and be able to provide a secure and stable home for these children . . . ." The trial court held that Hardy was not able to assume full responsibility of the children because he did not have a job, did not lease or own a home, lived with two other adults who were not related to him, received food stamps, had no transportation, and "intend[ed] to acquire 'hospitalization' for 'free' like he has it." The trial court noted that Hardy did not exercise the visitation that the JDR court awarded him and stated that Hardy's "failure to meaningfully pursue the visitation allowed him by the Juvenile Court negates his claim of [Poston] thwarting his efforts to assert his parental rights." The trial court found that it "spoke volumes" that Hardy visited "once every three months or so" while he had a liberal visitation schedule, and after the JDR court ordered supervised visitation, he visited once because he could not justify travelling "five hours just to visit his children for two [hours]." The trial court stated that Hardy's lack of efforts to visit the children "sum[med] up [Hardy's] real feelings, or lack thereof, toward his children." The trial court found that Hardy's "quality of the previous relationship with the daughter to be questionable at best and detrimental to her at worst." With respect to his son, the trial court found that Hardy's "quality of the previous relationship with the son to be almost non-existent." The trial court held that Poston had

provided the children "with a stable, loving and secure home" and was capable of caring for them and meeting their needs. The trial court also was concerned about Hardy's criminal history. He was convicted of murder approximately thirty years ago and served time in prison, but the trial court found that he still had "a propensity toward violent behavior," especially in light of a recent conviction and incarceration for malicious wounding. The trial court concluded that "a change in physical custody would be detrimental to both children . . . ."

On appeal, Hardy emphasizes that he tried to obtain custody of the children and stayed in contact with them. As he did at trial, he explains that he called the children, but contends Poston would not let him speak with them. In its letter opinion, the trial court considered this evidence and found that Poston was not "required to allow telephone calls under any Juvenile and Domestic Relations District Court Order." The trial court found that the evidence regarding the phone calls was "an example of [Hardy] attempting to maintain contact on his terms rather than those of the Court and only when convenient for him" because Hardy did not take advantage of the visitation the JDR court awarded him.

Hardy also argues that he has a quality relationship with his children, especially J.H., and that his parental bonds should not be severed. In his opening brief, Hardy states that "there is love between the father and at least one of the children." The trial court found that Hardy's relationship with N.H. was "almost non-existent." N.H. has lived with Poston since he was three weeks old. The trial court stated, "The uncontroverted evidence before the Court is that [Hardy] did not want the son, has threatened to 'beat' his son, has on occasion filed for custody of only the daughter and has never been called 'dad' or 'father' by the son." The evidence supports the trial court's findings that Hardy had no "quality relationship" with N.H.

With respect to J.H., the trial court stated, "The uncontroverted evidence is that the daughter, when she came to [Poston's] home was acting out sexually in a way 'no 3 year old

should know.'"  The trial court did not find that the evidence was sufficient to prove that Hardy abused her, but "such evidence clearly and convincingly indicates that [Hardy] failed to protect the child from facts or circumstances which resulted in her knowledge of such things."  In addition, the child's counselor testified that J.H. was "afraid of her father and does not wish to live with him."  The evidence supports the trial court's findings that Hardy's relationship with J.H. was "questionable at best and detrimental to her at worst."

Considering the factors in Code § 63.2-1205, the trial court did not err in granting Poston's petition for adoption.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>